IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

MICHAEL VASILE, SALLY ANN BURT KELSCH,

        Plaintiffs,

  vs.

FLAGSHIP FINANCIAL GROUP, LLC, et al.,

        Defendants.

No. 2:12-cv-02912-KJM-CKD

ORDER

_____/

        This matter is before the court on defendants' motions to dismiss several of plaintiffs' employment-based claims. (ECF 34, 35, 36, 37, 40.) The court decided the motion without a hearing. For the reasons below, the motions of defendants Acosta, Kim, Johnson and JKA are GRANTED; defendant Flagship's motion (ECF 40) is GRANTED in part and DENIED in part.

I.    ALLEGED FACTS AND PROCEDURAL BACKGROUND

        Plaintiffs worked for defendant Flagship Financial Group, LLC ("Flagship") as mortgage loan processors. (First Amended Complaint ¶¶ 12, 31, ECF 20 ("FAC").) Plaintiffs were supervised by defendants Acosta, Johnson, and Kim ("individual defendants"), who are principals and owners of defendant JKA Enterprises ("JKA"), an agency and/or franchise of defendant Flagship. (*Id.* ¶¶ 10, 144.) Defendants Acosta, Johnson, and Kim also supervised

1

Flagship's Sacramento office and served as plaintiffs' direct managers in this capacity as well. (*Id.* ¶ 10.)

In September 2011, early in their employment with defendants, plaintiffs observed other employees, at the direction of the individual defendants, and the individual defendants themselves forge borrowers' names and/or initials and change dates on various loan documents that were then submitted to obtain loans. (*Id.* ¶ 13.) A majority of the loans for which Flagship, JKA, and their employees applied, on behalf of Flagship's and JKA's clients, were federally backed mortgage instruments. (*Id.*)

In October 2011, defendant Johnson first asked plaintiffs to forge borrowers' names on various loan documents. (*Id.* ¶¶ 14, 34.) Plaintiffs refused to comply with these commands and informed Johnson that his requests were unlawful. (*Id.* ¶¶ 15, 33.) On various other occasions throughout October, November, and December 2011, defendants Johnson, Kim, and Acosta ordered one or both plaintiffs to forge signatures and to create fake email accounts for borrowers. (*Id.* ¶¶ 16, 33–34.) Plaintiffs refused to comply with any of these defendants' requests. (*Id.*)

Plaintiff Kelsch also alleges defendant Kim threatened her on at least three occasions. In late October 2011, shortly after plaintiff Kelsch refused to follow Johnson's orders to forge signatures, defendant Kim, who was present during Kelsch's refusal, attempted to "intimidate" Kelsch by stating, "I have a friend who likes to break kneecaps for fun" as he walked past her in the office. (*Id.* ¶ 34.) In November 2011, defendant Kim met with two men in an office near plaintiff Kelsch's desk. (*Id.* ¶ 37.) Kim purposefully left the door open so that Kelsch could hear his loud conversation in which Kim and the two unknown men laughingly shared stories about breaking people's kneecaps. (*Id.*) That same month, defendant Kim again mentioned breaking kneecaps to plaintiff Kelsch after Kelsch complained yet another time of defendants' unlawful loan activities. (*Id.* ¶ 41.)

Plaintiffs allege they were wrongfully terminated in retaliation for their refusal to break the law. Plaintiff Kelsch was fired on January 10, 2012, and plaintiff Vasile was fired
/////

on February 10, 2012. (*Id.* ¶¶ 22, 42.) At the time he was fired, plaintiff Vasile was owed outstanding sales commissions, which defendants have not yet paid. (*Id.* ¶ 23.)

Less than six months after their terminations, plaintiffs filed written complaints with the California Department of Industrial Relations Enforcement Office ("DIR") in Sacramento. (*Id.* ¶¶ 30, 43.) On April 13, 2012, plaintiff Kelsch filed a complaint relying on all the Labor Code violations alleged in plaintiffs' instant complaint; she does not explain the outcome of this administrative complaint. (*Id.* ¶ 43.) On July 13, 2012, plaintiff Vasile filed a complaint with DIR alleging only whistleblower violations and has not yet received a response. (*Id.* ¶ 30.)

Plaintiffs filed their original complaint in this court on November 30, 2012, alleging fourteen causes of action under both federal and state statutes and tort law, including retaliation and conspiracy to retaliate under the False Claims Act, 31 U.S.C. § 3729(a) and § 3730(h). (ECF 1.) Various defendants filed motions to dismiss in March 2013, which were mooted by plaintiffs' filing their First Amended Complaint on March 15, 2013. (ECF 20.) Defendants then filed the instant motions to dismiss in May 2013. (ECF 34, 35, 36, 37, 40.) Plaintiffs opposed these motions on June 29, 2013 (ECF 43), and defendants replied on July 5, 2013 (ECF 44, 45).

III.   STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must

3

include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

III.     ANALYSIS

Defendant Flagship seeks to dismiss several of plaintiffs' claims for sundry reasons. First, Flagship argues plaintiffs' second claim, conspiracy to commit retaliation under the False Claims Act ("FCA"), is not a valid claim. (ECF 40 at 13.) Additionally, Flagship seeks to strike any reference in plaintiffs' complaint to violations of the FCA because plaintiffs have not satisfied the procedural prerequisites for bringing a FCA claim, rendering any reference to FCA violations in the complaint immaterial, impertinent, and scandalous. (ECF 40 at 14.) Second, Flagship asserts that plaintiffs' wage claims, counts four through seven, should be dismissed for failure to exhaust administrative remedies. In the alternative, Flagship

requests a more definite statement as to the status of plaintiff Vasile's complaint before the DIR Labor Commissioner. (*Id.* at 15.)

Third, defendant Flagship asserts plaintiffs' seventh cause of action, a whistleblower claim, is not viable because plaintiffs did not engage in a protected activity. (*Id.* at 18.) Fourth, plaintiffs' requests for punitive damages in counts twelve and thirteen should be denied for failing to meet statutory pleading requirements. (*Id.* at 20.) Fifth, Flagship argues this court should decline to recognize the novel civil tort of making criminal threats, as pled in plaintiffs' thirteenth claim. (*Id.* at 21.) Sixth, defendants Acosta, Kim, Johnson, and JKA join defendant Flagship in arguing plaintiffs' fourteenth cause of action, a claim for negligence, should be dismissed because this claim does not exist in the at-will employment context in California and because no defendant owed plaintiffs a duty of care. (*Id.* at 24; ECF 34 at 6; ECF 35 at 6; ECF 36 at 6; ECF 37 at 6.)

The court addresses each of these arguments in turn.

A. Threshold Matter: Length and Timeliness of Plaintiffs' Opposition

Plaintiffs' opposition to defendants' motions was filed late and exceeds allowable page limits. Local Rule 230(c) requires oppositions to be filed "not less than fourteen (14) days preceding the noticed [] hearing date." As the hearing on the instant motions was set for July 12, 2013 (ECF 42), plaintiffs' opposition was due on June 28, but was filed on June 29 (ECF 43). In addition, this court's Standing Order, posted on the court's webpage, limits oppositions to twenty pages in length. Plaintiffs did not request leave to exceed this limit, and their opposition is over thirty-pages long.

As plaintiffs' opposition brief is indispensable to the court's efficient resolution of the pending motions, the court will still consider it. However, the court cautions plaintiffs' counsel that he may be sanctioned for any future failures to comply with the Local Rules and the court's Standing Order.

/////
/////
/////

B.      False Claims Act (Second Claim)

      1.      Viability of Conspiracy to Commit Retaliation Claim

Defendant Flagship argues the FCA does not authorize plaintiffs' second cause of action for conspiracy to commit retaliation. (ECF 40 at 13.) Flagship contends the FCA's plain language permits conspiracy causes of action only in certain circumstances specifically enumerated in 31 U.S.C. § 3729(a)(1).[1] (*Id.*) No part of the subsection cited mentions retaliation. (*Id.*) Plaintiffs counter that they properly pled a retaliation claim and they may plead a separate claim of conspiracy to retaliate under 31 U.S.C. §§ 3729 and 3730, "to make sure the ultimate trier of fact had both so as to prevent a 'slipping through the cracks.'" (ECF 43 at 6.)

The court finds the plain language of sections 3729 and 3730 of the FCA does not support a cause of action for conspiracy to retaliate. Plaintiffs' first cause of action for retaliation is based on 31 U.S.C. § 3730(h)(1), which affords relief to employees who suffer an adverse action "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." This section does not mention conspiracy. 31 U.S.C. § 3729(a)(1)(C) prohibits "conspir[acy] to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)." None of these subparagraphs mentions retaliation. Plaintiffs cite no authority in support of their claim that the FCA supports a claim for conspiracy to retaliate, and the court has been unable to locate any.

Plaintiffs' second cause of action is dismissed with prejudice.

      2.      Motion to Strike

Defendant Flagship argues that all language in plaintiffs' complaint alleging that Flagship violated the FCA is immaterial to plaintiffs' first cause of action for retaliation and should therefore be struck. (ECF 40 at 14.) Plaintiffs would be required to satisfy certain procedural prerequisites before alleging FCA violations; defendant contends plaintiffs should not be able to subvert these prerequisites by alleging impertinent and scandalous facts in an

---

[1] Flagship erroneously cites 18 U.S.C. § 3729(a)(1) in its opposition brief; the court corrects the cite here.

6

effort to show defendant violated the FCA. (*Id.* at 14–15.) Plaintiffs respond that to bring their retaliation claim they "must articulate the foundational facts demonstrating that the employer committed underlying violations of the FCA in general." (ECF 43 at 6.)

Federal Rule of Civil Procedure 12(f) states "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "Redundant matter is defined as allegations that 'constitute a needless repetition of other averments or are foreign to the issue.'" *Taheny v. Wells Fargo Bank, N.A.*, No. CIV S-10-2123 LKK/EFB, 2011 U.S. Dist. LEXIS 44300, at *7 (E.D. Cal. Apr. 18, 2011) (quoting *Thornton v. Solutionone Cleaning Concepts, Inc.*, No. 06-1455, 2007 U.S. Dist. LEXIS 8683 (E.D. Cal. Jan. 26, 2007)). "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded [and] [i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 534–35 (1994) (quoting 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382, at 706–07, 711 (1990)). "'Scandalous' includes allegations that cast a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

"[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are disfavored and infrequently granted." *Bassett v. Ruggles*, No. CIV F-09-528 OWW/SMS, 2009 U.S. Dist. LEXIS 83349, at *65 (E.D. Cal. Sep. 14, 2009). They should not be granted unless it is clear that the matter to be stricken could have no possible relevance to the controversy and may cause prejudice to one of the parties. *Taheny*, 2011 U.S. Dist. LEXIS 44300, at *7 (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380); *see also Wynes v. Kaiser Permanente Hosps.*, No. CIV S-10-0702-MCE-GGH, 2011 U.S. Dist. LEXIS 35400, at *31 (E.D. Cal. Mar. 31, 2011) ("[C]ourts often require a showing of prejudice by the moving party.").

The court denies defendant Flagship's motion to strike. Plaintiffs' allegations of FCA violations bear an important relationship to the claims in this action. To sustain their retaliation claim, plaintiffs must at minimum show they suspected defendants submitted a false claim. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Additionally, plaintiffs' whistleblower claim requires they demonstrate that they refused "to participate in an activity that would result in a violation of state or federal statute." CAL. LABOR CODE § 1102.5(c). Therefore, allegations that defendants attempted to require plaintiffs to submit false claims are relevant to the controversy plaintiffs plead.

C. Exhaustion of Wage and Whistleblower Claims (Claims Four through Seven)

Defendant Flagship argues plaintiffs' wage and whistleblower claims should be dismissed because plaintiffs have not exhausted state administrative remedies. (ECF 40 at 15.) Defendant asserts the California Supreme Court has held that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Id.* at 16 (citing *Campbell v. Regents of the Univ. of Cal.*, 35 Cal. 4th 311, 317 (2005)).) Flagship contends that two California Labor Code sections, section 98.7 and section 2699.3, require plaintiffs to file a complaint with the Labor Commissioner before filing a civil action. (*Id.* at 15–16.)

Plaintiffs counter that Flagship's exhaustion arguments are inapposite because the cases Flagship cites concern public employment and the instant case concerns private employment. (ECF 43 at 10.) Moreover, section 2699.3 mandates compliance with prelitigation requirements only when a plaintiff is seeking a civil penalty not otherwise available under the Labor Code. (*Id.* at 12 (citing *Dunlap v. Superior Court*, 142 Cal. App. 4th 330, 339 (2006)).) Finally, plaintiffs argue that plaintiff Kelsch has exhausted her wage and whistleblower claims, and that plaintiff Vasile exhausted his whistleblower claim but was not required to exhaust his wage claims. (*Id.* at 14.)

8

As discussed below, the *Campbell* case, read in combination with section 98.7, requires plaintiffs to exhaust administrative remedies for their whistleblower claim,[2] and plaintiffs have not exhausted their remedies as to this claim. However, plaintiffs are not required to exhaust their wage claims (claims four through six).

The California Supreme Court in *Campbell* instructed that the "rule of exhaustion is well established in California jurisprudence." 35 Cal. 4th at 321. This rule "is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Id.* (citation and internal quotation marks omitted[3]). Several federal courts have distinguished *Campbell* and held that plaintiffs are not required to exhaust Labor Department remedies before bringing a whistleblower claim, reasoning that *Campbell*'s explicit holding was that an aggrieved university employee was required to exhaust internal university remedies before filing suit. *See, e.g.*, *Creighton v. City of Livingston*, No. CV-F-08-1507 OWW/SMS, 2009 WL 3246825, at *10 (E.D. Cal. Oct. 7, 2009). However, most federal courts in California have read *Campbell* to require exhaustion of at least some statutorily-provided administrative remedies. *Hanford Executive Mgmt. Employee Ass'n v. City of Hanford*, No. 1:11-CV-00828-AWI, 2012 WL 603222, at *17 (E.D. Cal. Feb. 23, 2012). This court, in company with the majority of federal courts, finds that *Campbell* identifies a general exhaustion rule that extends to claims that can be brought under section 98.7.

---

[2] The First Amended Complaint asserts a claim for violation of California's Whistleblower Statute, Labor Code section 1102.5, on behalf of plaintiff Vasile only. Because no party addresses this, and Kelsch's briefing suggests she believes she has pled such a claim, the court, in an abundance of caution, analyzes this claim as if it were asserted on behalf of both plaintiffs.

[3] Nothing in the *Campbell* decision or in section 98.7 suggests this exhaustion requirement applies only to public employees. The *Campbell* court's stated rationale for the exhaustion rule — damages mitigation, expertise, and judicial economy — are equally served when an aggrieved employee works for a private company. *See* 35 Cal. 4th at 322.

Section 98.7(a) provides an administrative remedy to "any person" who believes he has been terminated "in violation of any law under the jurisdiction of the Labor Commissioner."[4] That person "may file a complaint with the division within six months after the occurrence of the violation." CAL. LABOR CODE § 98.7(a). The court understands section 98.7, by its own language, to provide an optional administrative remedy for any claim alleging wrongful termination, including under a whistleblower statute, which does not include claims alleging failure to pay wages.

In the instant case, both plaintiffs assert they filed claims with the DIR within six months of their termination, alleging they were terminated in violation of California's whistleblower statute, California Labor Code § 1102.5. (FAC ¶ 43 (plaintiff Kelsch); FAC ¶ 30 (plaintiff Vasile).) However, plaintiffs have not pled the fate of their complaints. Section 98.7(d)(1) reads in relevant part: "The complainant may, after notification of the Labor Commissioner's determination to dismiss a complaint, bring an action in an appropriate court." Plaintiffs' assertion that, according to section 2699.3(a)(2)(B), they need only wait for a response from the agency for 158 days, after which they may file a civil complaint, conflates the separate remedies schemes of sections 98.7 and 2699. This 158-day waiting period is only relevant to the section 2699 exhaustion requirements because, as plaintiffs concede in their opposition, these two schemes are separate. (ECF 43 at 12.) Because plaintiffs have not pled whether their claims were dismissed, plaintiffs have failed to demonstrate they exhausted their administrative remedies.

Accordingly, plaintiffs' seventh claim is dismissed with leave to amend. Flagship's motion for a more definite statement is denied as moot.

Defendant's assertion, however, that California Labor Code § 2699 also requires exhaustion of plaintiffs' wage and whistleblower claims is meritless. Section 2699(a), a provision of the Private Attorney General Act ("PAGA"), requires any person seeking a "civil

---

[4] The Labor Commissioner is the chief of the Division of Labor Standards Enforcement, which is part of the DIR. *See, e.g., Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990).

penalty" under any part of the Labor Code first to comply with various prelitigation requirements. Among these is the requirement that an aggrieved employee provide written notice to both the Labor and Workforce Development Agency and the employer, indicating how the employer is violating the law. CAL. LABOR CODE § 2699.3(a)(1). However, section 2699.3's exhaustion requirements apply only to plaintiffs seeking the kind of "civil penalty" that became available through PAGA. *Dunlap*, 142 Cal. App. 4th at 339. In other words, if an employee could recover a civil penalty provided by the Labor Code before PAGA was enacted, then PAGA's exhaustion requirements, meant to pertain to civil penalties previously available only to the State's labor law enforcement agencies, do not apply. *Id.* In the instant case, plaintiffs in their fourth through sixth claims do not seek such civil penalties previously available only to an agency and therefore are not subject to section 2699.3's exhaustion requirements. *See* CAL. LABOR CODE §§ 201, 203, 226.7, 510, 512, 1102.5 & 1194.

Plaintiffs' fourth, fifth, and sixth claims may proceed.

D. Whistleblower Claim—Dismissal as a Matter of Law (Seventh Claim)

Defendant Flagship argues plaintiffs' whistleblower claim also should be dismissed as a matter of law because plaintiffs did not report any information to a government or law enforcement agency. (ECF 40 at 18.)

Plaintiffs have stated an adequate claim for relief under California Labor Code § 1102.5(c). Section 1102.5(c) prohibits an employer from retaliating against an employee for "refusing to participate in an activity that would result in a violation of state or federal statute." The plain language of this subsection does not require that an employee divulge information to a government or law enforcement agency. *Cf. Ross v. Morgan Stanley Smith Barney*, *LLC*, No. 2:12-CV-09687-ODW, 2013 WL 865598, at *5 (C.D. Cal. Mar. 7, 2013) (dismissing § 1102.5(c) claim only because plaintiff did not allege his employer "requested that he participate in an activity that would violate applicable law"). Because plaintiffs allege Flagship

11

fired plaintiff Vasile for refusing to forge borrower signatures on mortgage loan applications (FAC ¶ 101), they have stated a valid section 1102.5 claim.[5]

Plaintiffs' seventh claim thus is not dismissed as a matter of law. It is dismissed without prejudice for failure to exhaust as discussed above.

E. Civil Assault and Civil Making of Criminal Threats (Twelfth and Thirteenth Claims)

Defendant Flagship moves to dismiss plaintiff Kelsch's thirteenth claim for civil making of criminal threats. (ECF 40 at 21.) Flagship argues no such cause of action exists, and that this court should not recognize this new cause of action because alternative remedies are available. (*Id.*) In response, plaintiffs assert that the court should recognize the civil tort making of criminal threats based on California Penal Code § 422 because this tort would best fit the facts of this case. (ECF 43 at 23.) Plaintiffs explain that their twelfth claim for civil assault is not as well suited to the facts of the instant case because that tort requires a threat of immediate injury. (*Id.* (citing *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1603–04 (2012)).) In the case at bar, plaintiffs argue, no such threat of immediate injury exists: defendant Kim's threatening statements aimed at plaintiff Kelsch "were not directed at the 'now' but were in regards to a non-specific future date and time." (*Id.* at 24.)

Defendants JKA and Kim, noting plaintiffs' concession that Kim's threats were not immediate, request in their reply that the court dismiss plaintiffs' twelfth cause of action for civil assault as well. (ECF 45 at 7.) Even though defendants did not move initially to dismiss plaintiffs' twelfth claim, and for that matter not all defendants moved to dismiss plaintiffs' thirteenth claim, this court has discretion to review issues not raised by defendants in their motions when plaintiffs raised those issues in their opposition. *See Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007) (considering a claim raised for the first time in a party's answering brief). The court here exercises that discretion.

---

[5] Plaintiffs' allege facts suggesting plaintiff Kelsch may also have a valid claim but, again, she is not mentioned in their seventh claim.

12

1 The court dismisses with prejudice plaintiffs' twelfth and thirteenth claims based on plaintiffs' concession that defendant Kim did not threaten immediate harm. Plaintiff mistakenly assumes that the criminal threats statute does not require a threat of immediate injury while the civil assault statute does. But both statutes require the offending conduct pose a threat of immediate injury. *Plotnik*, 208 Cal. App. 4th at 1603–04 (civil assault requires "demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present"); *In re Ricky T.*, 87 Cal. App. 4th 1132, 1136 (2001) (California Penal Code § 422 requires a showing that the threat "was so unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat"). Because plaintiffs admit plaintiff Kelsch did not apprehend immediate injury and assert instead that Kim's threats "were not directed at the 'now' but were in regards to a non-specific future date and time," plaintiffs cannot as a matter of law prevail on either their civil assault or civil making of criminal threats claim.

Plaintiffs' twelfth and thirteenth claims are dismissed with prejudice. Because the court dismisses these two claims with prejudice, the court does not need to reach defendant's argument that plaintiffs may not seek punitive damages based on them.

F. Negligence (Fourteenth Claim)

All defendants argue plaintiffs' fourteenth claim for negligence, based upon refusal to pay amounts due and wrongful termination allegations, is not cognizable in California. (*See, e.g.*, ECF 34 at 6.) Defendants assert nearly every court in the United States that has addressed such negligence claims in the at-will employment context has refused to entertain them. (*Id.* (citing *Vice v. Conoco, Inc.*, 150 F.3d 1286, 1292 (10th Cir. 1998)).) Plaintiffs are not without a remedy, defendants note; they also assert a statutory cause of action for wrongful termination. (*Id.*) Furthermore, defendants argue plaintiffs cannot demonstrate defendants owed plaintiffs a duty of care. (*Id.* at 15; ECF 40 at 24.)

Plaintiffs contend this court should entertain their claim of negligent discharge and failure to pay wages because they have sufficiently pled the elements of a negligence claim: duty, breach, causation, and damages. (ECF 43 at 26–29.) Plaintiffs argue the court

13

1 should extend the logic of *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980), a case that
2 recognized the intentional tort of wrongful discharge, to the circumstances of this case. (*Id.* at
3 26.) *Tameny*, plaintiffs assert, imposed upon employers a basic duty to follow California
4 public policy as contained in state statutes. (*Id.*) Based upon the logic of *Tameny*, these
5 defendants owe plaintiffs a duty of care in managing their employer-employee relationships.
6 (*Id.* at 28–30.) In addition, plaintiffs note the State of Oregon expressly recognizes the tort of
7 negligent discharge. (*Id.* at 28.)

8 Plaintiffs' negligence claim does not survive against any defendant because the
9 court declines to recognize the novel tort of negligence in at-will employment based on
10 allegations of refusal to pay wages and wrongful termination. Plaintiffs cite no California
11 authority recognizing such negligence claims, and a majority of jurisdictions in the United
12 States have explicitly rejected them. *See, e.g.*, *Vice*, 150 F.3d at 1292 (surveying cases from
13 several states and circuits to conclude that "the majority of jurisdictions which have considered
14 whether to impose liability for negligence in the context of employment terminations have
15 declined to do so").

16 In addition, plaintiffs' reliance on *Tameny* in support of creating this novel tort
17 is misplaced.[6] In the negligence realm, "duty" generally refers to a defendant's responsibility
18 to mitigate reasonably foreseeable risks, i.e., unintentional conduct. *Giacometti v. Aulla, LLC*,
19 187 Cal. App. 4th 1133, 1137 (2010) ("The threshold element of a cause of action for
20 negligence is the existence of a duty to use due care toward an interest of another that enjoys
21 legal protection against unintentional invasion . . . ."; citations and quotations omitted)).
22 Nothing in the *Tameny* court's analysis indicates that opinion sought to impose a duty on
23 employers to mitigate foreseeable harms assumed by at-will employees. *Tameny* does state that
24 "[a]n employer engaging in such conduct violates a basic duty imposed by law upon all
25 employers, and thus an employee who has suffered damages as a result of such discharge may
26 maintain a tort action for wrongful discharge against the employer." 27 Cal. 3d at 178.

---

[6] Plaintiffs' eighth claim is a *Tameny* claim based on defendants' intentional conduct. (FAC ¶ 119.)

14

1  However, the "conduct" referenced is intentionally violating public policy, such as
2  "demand[ing] that the employee commit a criminal act to further [the employer's] interests"
3  and "coerc[ing] compliance with such unlawful directions by discharging an employee who
4  refuses to follow such an order." *Id.*  Therefore, the concept of duty identified in *Tameny* is
5  inconsistent with the negligence concept of duty. *Tameny* does not impose a duty on employers
6  to refrain from negligently firing employees or from negligently refusing to pay wages or other
7  amounts owed to employees.
8       Plaintiffs' fourteenth claim for negligence is dismissed with prejudice as to all
9  defendants.
10  IV.   CONCLUSION
11       For the reasons set forth above, the motions to dismiss by defendants Acosta,
12  Kim, Johnson and JKA (ECF 34, 35, 36, 37) are GRANTED, and defendant Flagship's motion
13  (ECF 40) is GRANTED in part and DENIED in part.  The court orders plaintiffs to file an
14  amended complaint consistent with this order, within twenty-one days of the filed date of this
15  order.
16       IT IS SO ORDERED.
17  DATED:  August 16, 2013.

                                                           UNITED STATES DISTRICT JUDGE

15